UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RONALD LONG,

                Plaintiff,

-against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
12-CV-610 (FB)

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER JAMES BOWES, ESQ.
54 Cobblestone Drive
Shoreham, NY 11786

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
ARTHUR SWERDLOFF, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Plaintiff Ronald Long seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act (the "Act").[1] Both parties move for judgment on the pleadings. Long seeks a remand for additional administrative proceedings. For the reasons set forth below, the case is remanded for further proceedings.

**I.**

        Long filed applications for Supplemental Security Insurance on January 31, 2009 and Disability Insurance Benefits on February 3, 2009, alleging disability from depression and

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Colvin as the named defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Prinzmetal's angina, a syndrome characterized by recurrent but unpredictable episodes of chest pain. He also injured his back and neck in a motor vehicle accident in February 2009, which required surgery. After the Social Security Administration denied his applications, Long requested a hearing before an Administrative Law Judge ("ALJ").

On December 30, 2010, the ALJ concluded that Long was not disabled. Applying the familiar five-step process, the ALJ found that: (1) Long had not engaged in substantial gainful activity since January 31, 2009, the alleged onset date; (2) his status-post cervical discectomy fusion and his schizoaffective disorder qualified as "severe impairments," but his chest pain did not since it posed only slight functional limitations, AR at 22[2]; (3) his impairments did not meet the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) Long is unable to perform his past relevant work as a musician, and (5) "there are jobs that exist in significant numbers in the national economy that the claimant can perform," AR at 27.[3] The last two steps were based on the ALJ's finding that Long has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(a) and 416.967(b) except he is capable of only simple tasks." AR at 25.

The Appeals Council denied Long's request for review, rendering the Commissioner's decision to deny benefits final. Long timely sought judicial review.

---

[2]All citations to "AR" are to the Administrative Record.

[3]The burden of proof is on the claimant in the first four steps, but it shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.920(b)-(g); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Long argues that the ALJ erred by (1) failing to develop the record as to his cervical disorder, (2) improperly discrediting his complaints as to his cardiac impairment, and (3) violating the treating physician rule as to his mental impairment.

**A.  Evaluation of Long's Cervical Impairment**

Long first contends that the ALJ erred by failing to develop the record regarding his cervical spine impairment. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1512(d), 416.912(d).

The ALJ found Long's status-post cervical discectomy fusion to be a severe impairment, relying on the opinion of Dr. Harold Bernanke, an internist who reviewed the medical evidence but did not examine Long. In making this finding, the ALJ stated:

> The record establishes that the claimant was in a motor vehicle accident in February 2009, and experienced progressively increasing pain in his neck that radiated to both arms, necessitating cervical fusion surgery in November 2009. This condition could reasonably produce symptoms that would restrict the claimant's ability to fully exert himself at a job.

3

AR at 22-23. Yet when the ALJ asked Dr. Bernanke about any functional limitations, Dr. Bernanke noted that the records "really don't go into that." AR at 72. Long testified at the hearing that he continued to experience pain since his surgery, had undergone physical therapy, and was being treated by a Dr. Watooga (actually named Latugga).[4] He stated that his cervical spine impairment caused tingling, pain, and swelling, which prevented him from sitting for extended periods of time. Despite Long's identification of a treating physician and ongoing treatment, and despite Dr. Bernanke's identification of a significant gap in the record, the ALJ did not seek to develop the record. This was error. The ALJ's skepticism about Long's complaints did not relieve her of her obligation to fill a clear gap in the record.

Instead, the ALJ concluded that Long was capable of light work,[5] relying on the report of Dr. Marilee Mescon, an internist who examined Long at the agency's request, as the only available opinion on his physical capacity. However, Dr. Mescon's examination took place eight months before the surgery, and thus she could not have opined on Long's post-surgery capacity.[6] After being confronted with a record that contained evidence of a severe impairment but lacked evidence of its limitations, the ALJ should have contacted Long's

---

[4] Long informed the agency of his surgery a full year before the hearing.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may also require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). A claimant "must have the ability to do substantially all of these activities" in order "[t]o be considered capable of performing a full or wide range of light work." *Id.*

[6] The ALJ's reliance on this outdated opinion is further troubling given her finding that the neck pain was "progressively increasing." AR at 23.

4

physician or requested a more recent consultative examination. Upon remand, the ALJ must develop the record as to the limiting effects, if any, of Long's severe cervical spine impairment.

**B.     Evaluation of Long's Cardiac Impairment**

The ALJ concluded that Long's cardiac impairment is not severe and does not prevent him from performing light work. Substantial evidence supports these conclusions.

Although the record includes varying diagnoses of atypical angina, NSTEMI, and Prinzmetal's angina, evidence also suggests that Long's chest pain is resolved with medication. Clinical records indicate that, throughout 2009, Long had normal EKG results, regular cardiac rhythm, and cardiac markers within the reference ranges. Dr. Mescon diagnosed "Prinzmetal's angina, causing chronic chest pain," and opined that Long was not limited "in his ability to sit or stand, but his capacity to climb, push[,] pull, or carry heavy objects or to do heavy work would be moderately limited because of [his] heart problems." AR at 307-08. In preparation for spinal surgery, Dr. Scott Ratner, a cardiologist, reviewed Long's records and found "unremarkable" results in his cardiovascular exam. AR at 360. Dr. Ratner was "skeptical" of the Prinzmetal's angina diagnosis, noting that Long's "[c]atheter induced vasospasm is a well known phenomenon that does not imply that every episode of chest discomfort he has is ischemic in nature." AR at 360. Dr. Bernanke testified that Long's cardiac impairment did not equal a listed impairment, that medication provides relief but causes headaches, and that the only limitations associated with his chest pain are discomfort and apprehension. AR at 69-71. Agreeing with Dr. Ratner and Dr. Bernanke, the ALJ concluded that Long's cardiac impairment imposed only slight functional limitations.[7]

---

[7]The ALJ did not discuss Dr. Mescon's opinion as to Long's cardiac impairment.

5

In disputing this conclusion, Long does not point to any medical evidence indicating that his chest condition causes severe limitations. He principally claims that the ALJ improperly discredited his complaints of pain. He testified that he experiences severe chest pain every 3 to 4 months, and that his medication causes drowsiness and headaches.

The ALJ found that although Long's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his testimony regarding "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 26. When a claimant's subjective complaints suggest a greater severity than can be shown by objective medical evidence, the ALJ must consider other relevant factors, including the claimant's daily activities, the frequency and intensity of the pain and other symptoms, medications taken and their side effects, and other treatment administered to alleviate pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ properly considered these factors. She emphasized Long's admissions that his chest pain is relieved by medication and that he had not received any treatment for this condition for the past two years. She discredited Long's testimony regarding his daily activities as vague and conclusory. Thus, sufficient evidence supports the ALJ's evaluation of Long's cardiac impairment.

## C. Evaluation of Long's Mental Impairment

Finally, Long argues that the ALJ violated the treating physician rule in evaluating his mental impairment. Under this rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic

6

techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If an ALJ refuses to give controlling weight to a treating source, she must consider certain factors in deciding how much weight to give, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran*, 362 F.3d at 32. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Dr. Imtiaz Ghumman provided psychiatric treatment to Long once in 2009 and six times in 2010. Dr. Ghumman initially observed an inappropriate affect, a depressed and irritable mood, and thought-blocking, and Long reported hallucinations. Dr. Ghumman adjusted his medications and diagnosed a mood disorder. He next examined Long on February 4, 2010, after a relative reported suicidal ideation. Dr. Ghumann noted that Long appeared depressed and was hearing noises. He was hospitalized for four days that month due to depression and thoughts of hurting himself. On February 20, Dr. Ghumman noted that Long was "extremely depressed and emotionally disturbed" and was "experiencing psychosis." In the following months, Long continued to complain of anxiety, depression, paranoia, and hearing voices. Dr. Ghumman adjusted his medications, recommended continued treatment, and diagnosed a schizoaffective disorder. He opined in letters dated January 27, 2009, February 20, 2010, and December 29, 2010 that Long was unable to work or

7

function properly. His final letter stated:

> During the course of treatment, patient was found to suffer from depression, psychosis, anger issues, paranoia. Also having difficulty to focus and concentrate. Patient seems to suffer from chronic mental illness and does not seem to be able to function or work in job like setting. Any stress related/unrelated to work could deteriorate his clinical condition.

AR at 465.

In contrast, Dr. Herb Meadow conducted a consultative psychiatric examination in March 2009 at the agency's request. Although Dr. Meadow diagnosed "[p]anic disorder without agoraphobia" and "[a]djustment disorder with depressed mood," he opined that these conditions do "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis" and that Long "would be able to perform all tasks necessary for vocational functioning." AR at 303.

The ALJ found Long's schizoaffective disorder to qualify as a severe impairment, noting that it caused "more than mild limitations in functioning." AR at 23. However, in assessing Long's RFC and whether the disorder met a listing, the ALJ refused to accord significant weight to Dr. Ghumman's treating opinion and instead gave greater weight to Dr. Meadow's consultative opinion. The ALJ failed to give good reasons for doing so.

Although the ALJ referred to Dr. Ghumman's opinion as conclusory, there are extensive treatment notes that support his conclusion. The ALJ's duty to develop the record encompasses the duty to "seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R.

8

§§ 404.1512(e)(1), 416.912(e)(1).[8] Instead of seeking clarification or additional information, the ALJ rejected Dr. Ghumman's opinion in favor of a non-treating source opinion.

The ALJ criticized Dr. Ghumman for only seeing Long "sporadically," AR at 24, yet ultimately gave greater weight to the one-time agency examiner. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Further, the ALJ characterized the record as "reveal[ing] very infrequent psychiatric care" and decreasing hallucinations, AR at 26-27, but neglected to mention Long's hospitalization or suicidal ideation. This was improper because the ALJ "cannot simply selectively choose evidence in the record that supports h[er] conclusions." *Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 285-86 (E.D.N.Y. 1995). Moreover, the ALJ should not have discounted the seriousness of Long's condition without inquiring into reasons for the less frequent care. *See Campbell v. Astrue*, 596 F. Supp. 2d 446, 454 (D. Conn. 2009) ("The law is clear . . . that an ALJ may not draw negative inferences from a claimant's lack of treatment without

---

[8] Although new regulations took effect on March 26, 2012, the version in effect when the ALJ adjudicated the claim applies to this Court's review. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012). The new regulations relieve the ALJ of the duty to re-contact the source as the first step, *see* 20 C.F.R. §§ 404.1512, 416.912 (2012), and instead allow the ALJ to "determine the best way to resolve the inconsistency or insufficiency" based on the facts of the case, 20 C.F.R. §§ 404.1520b, 416.920b (2012). The ALJ must take at least one of the following steps: (1) re-contact the treating physician or other medical source, (2) request additional existing records, (3) request a consultative examination, or (4) ask the claimant or others for more information. *Id.* §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4). Notably, the new regulations "do not alter an adjudicator's obligations," and the agency "expect[s] that adjudicators will often contact a person's medical source(s) first." *How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,652 (Feb. 23, 2012).

9

considering any explanations the claimant may provide."); *see also* SSR 96–7p (stating that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record" and that this may require re-contacting the individual). Here, the record indicates that Long's health insurance was terminated, which could explain the less frequent treatment.

Although the ALJ found Dr. Meadow's opinion to be more consistent with the evidence regarding Long's treatment and continuing work activity, Dr. Meadow examined Long in March 2009 whereas Dr. Ghumman observed severe symptoms and limitations during 2010. Dr. Meadow noted that Long had never been hospitalized for psychiatric reasons, but after February 2010 this statement was no longer true. Further, Long's ability to socialize and to play musical engagements three times a month does not indicate that he can maintain competitive employment. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (rejecting the ALJ's determination that the claimant's periodic activities supported his ability to work where there was "no evidence that [he] engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job" (internal quotation marks omitted)).[9]

---

[9]In arguing that substantial evidence supports the ALJ's decision, the Commissioner cites the opinion of Dr. L. Meade, an agency psychological consultant who reviewed the record and opined that Long could perform simple tasks, maintain concentration, maintain a regular work schedule, and relate to others. The opinion of a treating physician is generally entitled to greater weight than the opinion of a non-examining consultant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). This holds particularly true in this case where Dr. Meade did not review Dr. Ghumman's notes and was not aware of Long's hospitalization. *See* SSR 96–6p (authorizing the ALJ to give greater weight to a non-examining agency consultant, where his opinion is based on the complete record, including more information than was available to the treating source).

Because the ALJ failed to provide good reasons for rejecting the opinion of Long's treating physician, remand is warranted.

### III

For the foregoing reasons, Long's motion for judgment on the pleadings is granted. The case is remanded to the Commissioner for further proceedings consistent with this opinion. Upon remand, the ALJ must reconsider Long's cervical spine and mental impairments—in particular, by developing the record as to the functional limitations of his cervical impairment and by properly applying the treating physician rule as to his mental impairment. If the ALJ continues to find Dr. Ghumman's opinion ambiguous or conclusory, the ALJ must seek additional information rather than relying on a less informed opinion.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 18, 2013

---

An ALJ must also explain why she relied on a non-treating opinion, *see* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii), but this ALJ did not even mention this opinion.